UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BENITA GOMEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-282-DCP |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 26]. Now before the Court are Plaintiff's Brief [Doc. 27] and Defendant's Motion for Summary Judgment [Doc. 29]. Benita Gomez ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Commissioner of Social Security ("Commissioner"). For the reasons that follow, the matter will be remanded for further administrative proceedings consistent with this opinion.

**I. PROCEDURAL HISTORY**

On August 26, 2016, Plaintiff submitted an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* [Tr. 519]. Plaintiff also submitted an application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381 *et seq.* on December 8, 2016 [*Id.* at 523]. Plaintiff claimed a period of disability that began on June 5, 2016 [*Id.* at 519, 524]. After her applications were denied initially [*id.* at 307–10] and on reconsideration [*id.* at 315–21], Plaintiff requested a hearing before an ALJ [*id.* at 322–23]. A hearing was held on August 29, 2018, before ALJ William Gray [*Id.* at 152–71]. On November 5, 2018, ALJ Gray

found that Plaintiff was not disabled [*id.* at 245–66] and Plaintiff requested the Appeals Council review the ALJ's decision [*id.* at 384–89].[1] On November 6, 2019, the Appeals Council vacated the hearing decision and remanded the case for further consideration [*Id.* at 267–70]. A hearing was conducted on March 2, 2020, before ALJ Frederick McGrath [*Id.* at 115–51], who found Plaintiff not disabled on March 24, 2020 [*Id.* at 271–97]. Plaintiff requested that the Appeals Council review ALJ McGrath's decision [*Id.* at 453–55]. On February 25, 2021, the Appeals Council vacated the decision and remanded the case for further consideration [*Id.* at 298–304]. A third hearing was held on June 16, 2021 before ALJ Lauren Benedict (hereinafter "the ALJ" or "ALJ Benedict") [*Id.* at 81–114]. ALJ Benedict found Plaintiff not disabled on July 6, 2021 [*Id.* at 46–80]. Plaintiff requested the Appeals Council review the hearing decision [*id.* at 516] which was denied [*id.* at 1–7], making ALJ Benedict's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 16, 2022 [Doc. 1]. Plaintiff filed her Brief in support of her Social Security appeal [Doc. 27], the Commissioner filed a Motion for Summary Judgment [Doc. 29] and accompanying brief [Doc. 30], and Plaintiff has filed her reply [Doc. 31]. This matter is now ripe for adjudication.

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

### A. Disability Eligibility

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be

---

[1] Plaintiff's request for reconsideration states that she believes the "judge's decision of 8/29/18 warrants reconsideration" [Tr. 384]. The Court construes this to be a request for reconsideration of the ALJ's decision dated November 5, 2018 [*id.* at 245–66] but for which a hearing was held on August 29, 2018.

considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her*

3

*v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

B. **The ALJ's Findings**

ALJ Benedict made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since June 5, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: history of Lyme disease with infection with Babesia; cervicalgia; and dorsalgia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can stand and/or walk for 4 hours in an 8-hour day which could would allow for a sit/stand option at 30-minute intervals; should not climb ladders, ropes or scaffolds, and can only occasionally perform other postural activities; and should not be exposed to temperature extremes or workplace hazards, such as unprotected heights or dangerous moving machinery.

6. The claimant is capable of performing past relevant work as a front desk receptionist, DOT #237.367-038, a sedentary semi-skilled occupation at SVP 4. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 5, 2016, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 51–70].

III. **STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of

credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

### IV. ANALYSIS

Plaintiff presents two issues on appeal [Doc. 27 p. 9]. First, Plaintiff argues that ALJ Benedict erred in failing to adopt or explain why she did not include the specific mental limitations opined by Dr. Timothy Smith ("Dr. Smith") related to concentrating, persisting, and maintaining pace [*Id.* at 12–14]. Second, Plaintiff contends that ALJ Benedict erred in finding that Plaintiff's chronic fatigue syndrome ("CFS") was not a medically determinable impairment ("MDI") because she used the wrong legal standard at step two [*id.* at 17–20] and that her decision "is vague in its analysis, suggesting CFS might not be medically determinable or, might be medically determinable and non-severe" [*id.* at 20–22]. The Commissioner responds that the ALJ did not err because substantial evidence supports her evaluation of Dr. Smith's opinion [Doc. 30 pp. 10–13] and because the ALJ applied Social Security Ruling 14-1p, finding Plaintiff had not received a

6

diagnosis from a doctor who had physically examined Plaintiff and reviewed her complete medical history as required by that ruling [*id.* at 8–10]. Upon review, the Court finds that while Plaintiff has not established a basis for remand on account of the ALJ's evaluation of her CFS at step three, the ALJ erred in failing to either incorporate the limitation from Dr. Smith's opinion into Plaintiff's RFC or explain why she did not do so.

### A. Mental Impairments

Plaintiff argues that in affording Dr. Smith's opinion significant weight, the ALJ mischaracterized Dr. Smith's findings, asserting that his opinion "suggests at least moderate limitation in the domain of concentrating, persisting, or maintaining pace – not mild" [Doc. 27 pp. 13–14]; failed to explain why she rejected this part of Dr. Smith's opinion [*id.* at 13]; and that this "error was harmful because the inability to meet time constraints, which equates to an inability to sustain pace, is critical to the performance of competitive work, even if that work is simple and unskilled" [*id.* at 14]. Plaintiff further asserts that the ALJ erred in omitting the limitation from the RFC assessment and in the hypothetical question posed to the vocational expert [*Id.* at 16]. The Commissioner responds that the ALJ did not err because substantial evidence supports her evaluation of Dr. Smith's opinion, such as records showing Plaintiff "had average processing speed and demonstrated well developed capacities for visual/motor processing speed" [Doc. 30 pp. 10–13]. Specifically, the Commissioner maintains that the ALJ was not required to "wholly adopt[]" Dr. Smith's opinion merely because she afforded it "significant weight" [*Id.* at 12]. The Commissioner further asserts that Plaintiff was found capable of performing her past relevant work as a front desk receptionist and that "[she] has presented no argument that an individual precluded from work that measures performance by obtaining production demands against a time constraint is incapable of performing her past relevant work" in that particular position [*Id.* at 13].

Plaintiff was referred to Dr. Smith, a licensed psychologist, for a neuropsychological assessment by the Georgia Department of Vocational Rehabilitation [Tr. 1110]. Dr. Smith examined Plaintiff on June 20, 2019 to "help quantify her cognitive abilities to assist in vocational rehabilitation planning" [*Id.*]. Dr. Smith produced a report which included summaries of Plaintiff's work history, background, past medical history, and psychiatric history [*Id.* at 1110–11]. The report also included the results from testing Dr. Smith conducted along with his analysis [*Id.* at 1112–18]. Dr. Smith concluded that Plaintiff "presents with average intelligence" and "has well developed academic skills" but that "there are indications of difficulties with aspects of visual/motor processing speed" which "is creating problems for her in aspects of academic fluency" [*Id.* at 1117]. "Further, she has a history of difficulties with depression and is currently receiving treatment" [*Id.*]. Dr. Smith recommended that Plaintiff "should avoid positions that measure performance by obtaining production demands against a time constraint" [*Id.*]. ALJ Benedict gave Dr. Smith's opinion "significant weight and, together with other evidence in the record as a whole, including the claimant's activities of daily living, found that it supports no limitations in most functional areas, but mild functional limitations in the areas of concentration, persistence, and pace, and adaptation" [*Id.* at 68].

Here, the ALJ did not include any mental limitations in the RFC. She discussed mental limitations at step two of the analysis, finding that Plaintiff had only a mild limitation in two of the four broad areas of mental functioning known as the "paragraph B" criteria—(1) concentration, persisting or maintaining pace and (2) adapting or managing oneself—and therefore concluding Plaintiff's mental impairments were nonsevere [*Id.* at 54].[2] The paragraph B criteria used at steps two and three, however, do not constitute an RFC assessment. *Taylor v. Colvin*, 2016 WL 760399,

---

[2] The ALJ found that Plaintiff has no limitation in the other two functional areas – understanding, remembering, or applying information and interacting with others [Tr. 53–54].

8

at *13 (N.D. Ohio Feb. 26, 2016) (citation omitted). The ALJ is "not required to include a paragraph B finding as part of her RFC determination." *Bookmyer v. Comm'r of Soc. Sec.*, No. 1:22-cv-1004, 2023 WL 2643496, at *6 (W.D. Mich. Mar. 27, 2023). That is because "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings." SSR 96-8p, 1996 WL 374184, at *4 (June 2, 1996). Therefore, a finding by the ALJ that Plaintiff has mild or moderate difficulties in concentration, persistence, or pace and in adapting or managing oneself, does not necessarily mean that Plaintiff will have corresponding limitations with regard to her RFC. *See Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) ("[T]he ALJ does not have to include paragraph B finding in his RFC finding. . . . Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five."). Instead, the pertinent question is whether the ALJ's RFC determination and accompanying hypothetical questions posed to the vocational expert "accurately portray a claimant's individual physical and mental impairments." *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010)); *Bookmyer*, 2023 WL 2643496, at *6 ("The pertinent question, then, is whether the ALJ's RFC assessment properly accounted for Plaintiff's mental limitations."). "Courts . . . have also found, however, that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment may constitute reversible error where the ALJ makes no mention of the claimant's mental impairments in the RFC analysis." *Shamsud-Din v. Comm'r of*

9

*Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017) (internal citations omitted).

The Commissioner contends that the ALJ's analysis was sufficient, noting that "together with other evidence in the record as a whole, including Plaintiff's activities of daily living, [the ALJ] found that [Dr. Smith's] opinion supported no limitations in most functional areas but mild functional limitations in the areas of adapting and concentrating, persisting, and maintaining pace" [Doc. 30 p. 11 (citing Tr. 54, 68)]. The Commissioner also points to the ALJ's statement that "contrary to Dr. Smith's opinion, the record did not reflect reliable evidence of a persistent limitation which is more than mild in meeting such demands" [*Id.* (citing Tr. 54)]. Most of these statements, however, were made by the ALJ at step two when analyzing the paragraph B criteria and determining that Plaintiff had mild limitations in two functional areas. In the more detailed assessment required under step four, the ALJ, after acknowledging Dr. Smith's limitation of avoiding jobs "requiring measurement by production demands against a time constraint," gives Dr. Smith's opinion "significant weight" [Tr. 68] and notes the mild functional limitations, yet includes no mention of mental limitations in the RFC or otherwise explain why she did not include any limitation. "By not including a discussion of why the RFC excluded [Plaintiff's] mental impairments, the ALJ did not provide 'a more detailed' analysis of these mental impairments, at Step 4, as SSR 96-8p instructs." *Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021). And the Court is left to speculate how the ALJ ultimately arrived at an RFC that included no mental limitations. It could be that ALJ Benedict believed Plaintiff's mild mental health limitations did not impact her ability to work. *See id.* ("Perhaps the ALJ rationally believed the functional limits had no impact on [plaintiff's] work ability. Certainly, not every mild or moderate limitation signifies a compromised work ability."). However, "[t]he Court simply cannot discern this

because the ALJ did not in any way address the matter." *Id.* "But where, as here, the ALJ assigns great weight to a particular opinion and states that it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so." *Allen v. Comm'r of Soc. Sec.*, No. 2:17-CV-1154, 2018 WL 6060446, at *4 (S.D. Ohio Nov. 20, 2018), *report and recommendation adopted*, No. 2:17-CV-1154, 2018 WL 6681225 (S.D. Ohio Dec. 18, 2018).

Without this explanation, the Court cannot determine whether the ALJ's decision related to Plaintiff's mental limitations was supported by substantial evidence and therefore remand is required.

### B. Chronic Fatigue Syndrome

Next, Plaintiff argues that ALJ Benedict erred in finding that Plaintiff's CFS was not an MDI because she did not follow Social Security Ruling 14-1p and seemingly conflated deciding whether Plaintiff's CFS was an MDI and whether her CFS was a severe impairment [Doc. 27 pp. 15–22]. The Commissioner responds that the ALJ's finding that Plaintiff's CFS was not an MDI was in accordance with Social Security Ruling 14-1p because Plaintiff had not received regularly recurrent findings associated with the impairment nor a diagnosis from a doctor who had physically examined Plaintiff and reviewed her complete medical history as required by that ruling [Doc. 30 pp. 8–9]. Specifically, the Commissioner contends that the "ALJ properly found that the record did not reflect regularly recurrent findings associated with" CFS because the "treatment records fail to establish the existence of any of [the medical signs of CFS] for six consecutive months as required by the SSR" [*Id.* at 9]. The Court finds that the ALJ analyzed Plaintiff's claim of chronic fatigue at step two under Social Security Ruling 14-1p, though she did not explicitly cite to it.

Social Security Ruling 14-1p instructs how the Administration will evaluate CFS. SSR 14-1p, 2014 WL 1371245. "The Ruling explains that CFS is 'a systemic disorder consisting of a complex of symptoms that may vary in frequency, duration, and severity' but generally causes prolonged fatigue lasting six months or more, and is only diagnosed after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded." *Riedel v. Kijakazi*, No. 20-CV-1361, 2022 WL 613298, at *2 (E.D. Wis. Mar. 2, 2022), *appeal dismissed*, No. 22-1535, 2023 WL 6396080 (7th Cir. June 1, 2023) (quoting SSR 14-1p, 2014 WL 1371245, at *2). "[Social Security Ruling] 14-1p also describes other potential symptoms of CFS, including, for example, muscle weakness, disturbed sleep patterns, gastrointestinal discomfort, and orthostatic intolerance." *Id.* (citing SSR 14-1p, 2014 WL 1371245, at *3).

In concluding that Plaintiff's CFS was not medically determinable, ALJ Benedict found that while Plaintiff reported having many these symptoms, they were either treated or Plaintiff had refused treatment. For example, while the record indicated that Plaintiff had alleged sleep issues, the ALJ noted that Plaintiff was treated with "Amitriptyline and infrequently exhibited physical slowness at medical examination(s), she had no sleep study or specific diagnosis for this complaint, and she reportedly now takes Amitriptyline only on an as-needed basis" [Tr. 52]. In addition, the ALJ noted that Plaintiff "has alleged symptoms of hand pain, particularly after computer overuse for long periods; however, the record reflects no orthopedic or rheumatologic evaluation or diagnosis, or medically reliable examination findings of recurrent/persistent abnormalities in the hands" [*Id.*]. Plaintiff also reported respiratory issues [*Id.*]. However, the ALJ found that:

> [T]he record reflects no referral or treatment by a pulmonologist, no diagnosis of a persistent lung impairment, and no medically reliable findings of respiratory deficits on a persistent or recurrent basis, particularly under conditions of sustained compliance with appropriate medical treatment. Recent records continue to show normal respiratory examination findings, with clear lungs, normal oxygen saturations, and normal work of breathing.

12

Case 1:22-cv-00282-DCP   Document 32   Filed 03/04/24   Page 12 of 16   PageID #: 1405

[*Id.*]. Finally, pertaining to mental deficit symptoms the ALJ concluded that:

> Dr. Smith assessed an unspecified neurocognitive disorder at a June 2019 neuropsychological examination, based on subscores below expectation in processing speed and academic fluency, which Dr. Smith found to be inconsistent with the other test findings. However, she contemporaneously reported that she had acute depression symptoms causing "less [sleep, energy and concentration] than usual," for which he recommended further depression treatment. The record as a whole is not consistent with persistent mental deficits, and Dr. Smith saw her only at a single examination; he did not have the opportunity to assess persistent deficits, the contributory effect of acute symptoms, and/or possible contributory impact from side-effects of prescribed Amitriptyline.

[*Id.* (alteration in original)]. Overall, with regard to Plaintiff's CFS, ALJ Benedict concluded, "available evidence relating to the foregoing conditions does not establish medically determinable impairments persisting and/or imposing significant limitations for at least 12 months[3] despite sustained compliance with appropriate medical treatment. Accordingly, I find they are not medically determinable and/or non-severe as defined in governing regulations" [*Id.* at 52–53]. ALJ Benedict analyzed the list of symptoms in Social Security Ruling 14-1p to the extent that the record indicated Plaintiff suffered from them. *See* SSR 14-1p, 2014 WL 1371245, at *3 (listing symptoms including disturbed sleep patterns, multi-joint pain without joint swelling or redness, muscle pain, respiratory issues, and self-reported impairments in concentration). That the ALJ did not cite specifically to the regulation is not a sufficient reason to disturb the Commissioner's decision. *See Infantado v. Astrue*, 263 F. App'x 469, 474 (6th Cir. 2008) ("In other words, without explicitly citing 20 C.F.R. § 404.1527(d)(2), the ALJ did in fact rely on regulation factors in

---

[3] The Court notes that Social Security Ruling 14-1p states that the symptoms of CFS must persist or recur for six or more consecutive months. While ALJ Benedict's conclusion may combine the two analyses, based on her discussion she concluded Plaintiff's CFS was not medically terminable because Plaintiff did not have the symptoms at any point in time. Therefore, it is of no consequence that she combined the length of time in her conclusion to cover both the severity and MDI analysis.

13

discounting Dr. Colton's opinion. . . . Here, the ALJ's failure to *explicitly* cite the regulation factors is no impediment to meaningful review and is therefore no grounds for reversal.").

However, even if ALJ Benedict did not properly consider Social Security Ruling 14-1p at step two, she considered Plaintiff's non-MDI and/or non-severe CFS in her RFC analysis. At step two in the sequential process, a claimant is required to show that they suffer from a "severe impairment" in order to be found disabled. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). A "severe impairment" is one that "significantly limits your physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Once an ALJ finds that a claimant has one severe impairment, they must consider both severe and non-severe impairments at the remaining steps. *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). As such, it has long been held that "[g]enerally, an ALJ does not commit an error requiring automatic reversal by finding a non-severe impairment under two circumstances: (1) the ALJ also found that claimant has at least one severe impairment; and (2) the ALJ considers both the severe and non-severe impairments during the remaining steps in the sequential evaluation." *Johnson v. Colvin*, No. 3:13CV00301, 2014 WL 6603376, at *7 (S.D. Ohio Nov. 19, 2014), *report and recommendation adopted*, No. 3:13CV00301, 2014 WL 7015188 (S.D. Ohio Dec. 10, 2014).

Such is the case here. At step two, the ALJ concluded that Plaintiff had the following severe impairments: history of Lyme disease with infection with Babesia; cervicalgia; and dorsalgia [Tr. 51]. Throughout her discussion following the RFC determination, ALJ Benedict discussed Plaintiff's chronic fatigue and fatigue symptoms [*See id.* at 55–69]. For example, ALJ Benedict noted that Plaintiff "reported fatigue and inability to sit at the computer for of an hour at a time" but that these symptoms were "due to neck, back and muscle pain/stiffness, sleep problems, intermittent cognitive problems, and anxiety/depression" [*Id.* at 61]. She also stated that Dr.

14

Daniel B. Kalb ("Dr. Kalb") diagnosed Plaintiff with chronic fatigue among other impairments, but that he found the lab reports showed that her diagnoses "resulted from Lyme disease and a co-infection of Babesia duncani" [*Id.*]. Later in her decision, ALJ Benedict further discussed Dr. Kalb's CFS diagnosis and found that his "notes reflect no examinations but reflect on [Plaintiff's] complaints" related to CFS [*Id.* at 65]. Ultimately, the ALJ concluded that Dr. Kalb's opinions were "inadequately supported and unpersuasive" and assigned Dr. Kalb's opinion little weight because she found them "not supported by his current or previous findings;" Plaintiff did not comply with his treatment nor referrals; and "after February 2016, he agreed to forego examinations" [*Id.* at 66]. Further, ALJ Benedict determined Dr. Kalb's opinions were "based on the subjective allegations . . . in lieu of examination findings" [*Id.* (citing Exhs. 14F, 15F, 24F/5(dup), 20F, 26F, 31F)].

And ALJ Benedict otherwise considered Plaintiff's CFS symptoms. In addition to Dr. Kalb's report on CFS, ALJ Benedict discussed the Disability Determination Services ("DDS") medical consultant's assessment of CFS [*Id.* at 68]. After reviewing Plaintiff's medical records, the DDS consultant found Plaintiff had CFS and limited her to a "wide range of light activities, occasionally climbing ladders and frequently performing other postural activities, but should avoid unprotected heights and other hazardous activities" [*Id.*; *see also id.* at 236)]. The ALJ found this opinion to be "well-supported by the medically reliable findings in examination and treatment records" [*id.*] and incorporated restrictions of climbing ladders, postural, heights, and machinery into the RFC [*id.* at 55].

The ALJ's decision, while it did not cite to the Social Security Ruling pertaining to CFS, otherwise thoroughly considered Plaintiff's CFS diagnosis and found that the record showed Plaintiff was still able to perform light work. Further, any error in this regard would be harmless

15

as Plaintiff has not demonstrated how classifying her CFS as a medically determinable condition would have changed the weight the ALJ gave to Dr. Kalb's opinion. *See Moody v. Comm'r of Soc. Sec.*, No. 2:18-cv-540, 2019 WL 4385801, at *1 (S.D. Ohio Sept. 13, 2019) ("Plaintiff thus fails to demonstrate how adding the mere CFS diagnosis to the ALJ's calculus would have changed the ALJ's evaluation of Plaintiff's subjective complaints of fatigue.").

## V. CONCLUSION

Accordingly, the Court, on the bases discussed, **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment [Doc. 29]. Pursuant to 42 U.S.C. § 405(g), the Court **REMANDS** this matter to the Commissioner for further proceedings consistent with this Opinion & Order. The Court will enter a separate Judgment.

**IT IS SO ORDERED.**

ENTER:

_____
Debra C. Poplin
United States Magistrate Judge

16

Case 1:22-cv-00282-DCP   Document 32   Filed 03/04/24   Page 16 of 16   PageID #: 1409